JOHN WOLF, Exr.

*v.*

· JACOB BEAIRD *et al.* EXrs.

*Filed at Mt. Vernon January 20, 1888.*

1. ACTION—*to recover back money paid by mistake.* Money paid by one to another by a mutual mistake of facts in respect to which both were equally bound to inquire, may be recovered back in assumpsit, under the count for money had and received.

2. SAME—*over-payment by an executor or administrator—as, being in excess of pro rata distributive share.* Where an administrator or executor, under the honest belief that the estate is solvent, pays a creditor in excess of his *pro rata* distributive share, he may recover back the over-payment in an action for money had and received for the use of the estate, and, after final settlement, for his own use. In such case it matters not to the defendant whether the plaintiff sues in his representative capacity or in his individual name.

3. A recovery of an over-payment made by an executor, after his final settlement, will be for his own use, although he may have sued in his representative capacity. If sued by the heirs of the testator, he can plead as a set-off the sum advanced by him to the estate to make up the over-payment.

4. Before the expiration of two years from the grant of administration upon an estate, the executor paid a claim in full, in the belief that the estate was solvent, and in ignorance of the existence of two other large claims, which, within the two years, were presented and allowed. On final settlement it was found that the assets would pay only sixty-one per cent of the seventh class claims. The creditor so paid in full died testate, and the executor of the first estate, in his representative capacity, filed his claim against the estate of the latter to recover back the over-payment. Before the final hearing of this claim, on appeal, the executor of the first estate made a full settlement of his administration, and was discharged: *Held,* that his right of action accrued upon his payment of the claim in full, and that upon his final settlement the over-payment was recoverable for his individual use, and that he was entitled to have the allowance, notwithstanding it was filed in his representative capacity. The striking of a dividend by the county court was not a condition precedent to his right of action, but only afforded evidence of the condition of the estate.

5. EVIDENCE—*of payment of claim by executor.* The order of the county court approving the final report and settlement of an executor, showing the payment of all claims in full except the seventh class, and a certain per cent of them, and discharging the executor, is evidence of such payment by him, in an action by him to recover an over-payment.

6. PARTIES—*in what capacity one may sue to recover over-payment by an administrator.* Where the administrator of an insolvent estate pays one claim in full, or more than its *pro rata* share, under the mistaken belief the estate is solvent, the legal title of the money so paid being in him, he may recover the excess in the payment in his individual name. If he sues as administrator, those words may be treated as descriptive of the person, and disregarded as surplusage.

7. SAME—*as to contracts with executor made after testator's death.* An executor or administrator may sue, either in his representative or personal character, on contracts made with him after the death of his testator or intestate. And when an indebtedness grows out of a contract with the executor, express or implied, he may sue in his own name, and if the word "executor" is used after his name, it may be disregarded, as being immaterial.

8. COSTS—*against an estate—in suit by executor to recover over-payment.* If an executor or administrator pays one creditor more than his distributive share, he will not be allowed to charge the estate with the expenses or costs of a suit brought by him, either in his individual name or in his representative capacity, to recover back such over-payment.

9. COUNTY COURT—*equitable powers in the allowance of claims—forms of pleading.* In the allowance of claims against estates, the county court is possessed of an equitable jurisdiction, and may disregard mere forms, and look to the substance. No written pleadings are required.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on writ of error to the circuit court of Richland county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. GIBSON & JOHNSON, for the appellant:

Wolf had the right to pay Gharst's allowance without any special order of the county court. *Walker* v. *Craig,* 18 Ill. 123.

As 61.72 per cent was all that Gharst was entitled to receive under section 112, chapter 3, of the Revised Statutes, all that he received in excess of that amount, in equity and good conscience belongs to Wolf, and may be recovered. *Watson* v. *Woolverton,* 41 Ill. 241; *Alderson* v. *Ennor,* 45 id. 128; *Belden* v. *Perkins,* 78 id. 449; *Barnes* v. *Johnson,* 84 id. 95; *Taylor* v. *Taylor,* 20 id. 650; *Bennett* v. *Conelly,* 103 id. 56.

Money paid by one party to another, through a mutual mistake of facts in respect to which both were equally bound to

inquire, may be recovered back. *City Bank* v. *Bank of Albany*, 1 Hill, 287; *Wheaton* v. *Olds*, 20 Wend. 174.

Money paid voluntarily, under mistake of facts, is recoverable, both at law and in equity, unless it be clear that the party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth if he had chosen to make inquiry. The only limitation is that he must not waive all inquiry. *Kerr on Fraud and Mistake*, 415; *Frambers* v. *Risk*, 2 Bradw. 499.

Money may be recovered which has been paid under a mistake, on the part of the payer, of a material fact,—that is, of a fact which, in the absence of mistake, would have made the person paying liable to pay the money. *Chitty on Contracts*, (10th Am. ed.) 694; 1 *Chitty's Pl.* 355; *Bank* v. *Mitchell*, 88 Ill. 52; *Stempel* v. *Thomas*, 89 id. 147; *International Bank* v. *Bartelott*, 11 Bradw. 620; *Bradford* v. *Chicago*, 25 Ill. 411.

When an administrator, supposing an estate solvent, pays a creditor of an estate more than his proper share, he may, in his individual character, recover back the excess. *Walker* v. *Hill*, 17 Mass. 380; *Rogers* v. *Weaver*, 5 Ohio, 536.

The county court, in the allowance of claims, is clothed with both a law and equity jurisdiction. *Dixon* v. *Buell*, 21 Ill. 203; *Hurd* v. *Slaten*, 43 id. 348; *Moline Co.* v. *Webster*, 26 id. 239; *Moore* v. *Rogers*, 19 id. 348.

An executor or administrator may sue, either in his representative or in his personal character, on contracts made with him, as executor, after the death of the deceased. *Dicey on Parties*, (Am. ed.) 233.

The legal title to the money which Gharst received was in Wolf. *Makepeace* v. *Moore*, 5 Gilm. 474; *Walker* v. *Craig*, 18 Ill. 116; *Neubrecht* v. *Santmeyer*, 50 id. 74.

A court of law will not inquire whether a plaintiff sues for himself, or as trustee for some other person. It is sufficient if he has the legal interest in the subject matter of the suit. *Corbett* v. *Schumacher*, 83 Ill. 403; *Chadsey* v. *Lewis*, 1 Gilm.

153; *Manlove* v. *McHatton*, 4 Scam. 95; *People* v. *Stacy*, 6 Bradw. 521; *McHenry* v. *Ridgely*, 2 Scam. 309; *Laycock* v. *Oleson*, 60 Ill. 31.

The word "executor," after plaintiff's name, being merely descriptive of the person, may be treated as surplusage. *Newhall* v. *Turney*, 14 Ill. 338; *McKinley* v. *Braden*, 1 Scam. 66; *Baker* v. *Ormsby*, 4 id. 325.

Messrs. WILSON & HUTCHINSON, for the appellees:

Money voluntarily paid can not be recovered back, and when an administrator pays a claim in full, without any order to do so, he can not afterward sue as such administrator, and recover it back, even if it turns out that he paid too much. *Falls* v. *Cairo*, 58 Ill. 403; *Savings Institution* v. *Linder*, 74 Pa. St. 371; *Dunsan* v. *Benton*, 5 Rob. (N. Y.) 457; *Binmagin* v. *Tillingarst*, 15 Cal. 165; *Garrison* v. *Tillingarst*, 18 id. 404.

Over-payment of a claim, without authority by an executor, is a matter between the two individuals, and the estate should not be wasted in litigating such matters. When the executor finally settled the estate, and was discharged, the suit abated. Wolf could not maintain the suit in his individual name, because he had not then paid out any of his own money.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Edward J. French died testate on March 3, 1880. His will was admitted to probate in the county court of Richland county, and letters testamentary were issued to the appellant, John Wolf, as the executor thereof, on March 8, 1880. The county court allowed two claims against French's estate, one on May 18, 1880, and another on August 17, 1880, in favor of John B. Gharst. During the first year of the administration Wolf had money enough on hand to pay in full all the claims filed against the estate before the end of that year. He paid. Gharst thirty per cent of his two claims on August 17, 1880,

and he paid him the balance of such two claims on October 15, 1880. On the latter date Gharst's total claim against the estate was paid in full.

At the time Wolf paid Gharst's claim in full, he and Gharst both believed that French's estate was solvent and would not only be able to pay all the debts, but would have a surplus for the heirs. Both parties acted in good faith, the executor in paying, and the creditor in receiving the full amount of the claim. If the claims hereafter mentioned, which were not known to exist at that time, had not been filed, the surplus would have amounted to $1800.

Two large claims were allowed against the estate, one, on June 20, 1881, in favor of Robert Allyn, trustee, and another, on June 21, 1881, in favor of Lucy French, which made the estate insolvent as to the payment of claims of the seventh class. By the allowance of these latter claims, the assets were so reduced, that the estate was only able to pay 61.72 per cent of the claims of the seventh class, to which the Gharst claim and the Allyn and Lucy French claims all belonged. It thus turned out that Gharst had been overpaid by the amount of the difference between 100 per cent and 61.72 per cent.

Gharst died testate on September 4, 1881, and the appellees are the executors under his will. Wolf, as executor of the estate of E. J. French, deceased, filed a claim against Gharst's estate, in the county court of Richland county, for the excess of the amount so paid· to Gharst over the *pro rata* share to which he was properly entitled. On June 20, 1882, this claim of Wolf against Gharst's estate was allowed by the county court, and an appeal was taken to the circuit court, where the case was tried before the circuit judge without a jury by agreement. The circuit court ordered that the claim be allowed as a seventh class claim to be paid in due course of administration, and directed that its order be certified down to the county court for payment. The case was then taken by writ of error to the Appellate Court, which, at its February term, 1886,

reversed the judgment of the circuit court and remanded the cause.

A second trial was had before the circuit judge without a jury at the November term, 1886, which resulted in a judgment in favor of appellant against appellees. This judgment has been brought before the Appellate Court a second time and has been again reversed. It now comes before us by appeal from the Appellate Court, and upon certificate that the case involves a question of law of such importance, on account of collateral interests, that it should be passed upon by the Supreme Court.

Both Wolf and Gharst knew or were bound to know, that, under the law, Gharst could not lawfully receive his claim in full out of the assets of the French estate, unless those assets were sufficient to pay all claims of the same class with his own. There was a mutual mistake of facts in respect to which both parties were equally bound to inquire. They both believed that the assets were sufficient to pay the claims in full and acted upon such belief, but both were mistaken in regard to the fact. "Money paid by one party to another through a mutual mistake of facts, in respect to which both were equally bound to inquire, may be recovered back." *Canal Bank* v. *Bank of Albany,* 1 Hill, 287; *Wheadon* v. *Olds,* 20 Wend. 174.

"The count for money had and received is also maintainable for the recovery of money paid under a mistake, on the part of the payer, of a material fact." (2 Chitty on Contracts, (11th ed.) 928; 1 Chitty's Pl. 355; *Bank* v. *Mitchell,* 88 Ill. 52; *Stempfel* v. *Thomas,* 89 id. 147.) Wolf was mistaken in a material fact. If he had not been mistaken in the fact, which he supposed to exist, that the assets were sufficient to pay the claims in full, in other words, if the assets had been sufficient to pay the claims in full, he would have been liable to pay Gharst the 38.28 per cent, so paid to him by mistake.

The filing of the claim by Wolf against Gharst's estate was in the nature of an equitable action for money had and re-

ceived, or money paid under a mistake of fact. If Wolf could have brought an action of assumpsit against Gharst in the latter's lifetime for the excess of the payment over the proper *pro rata* share, then a claim for such excess was a proper claim to be filed against Gharst's estate, so far as the nature of the demand is concerned.

It was held in *Rogers* v. *Weaver*, 5 Ohio, 536, that an administrator, who, under the supposition that the estate was solvent, had paid a creditor beyond his distributive share, might, upon final settlement, recover back the difference in an action for money had and received. See also *Walker* v. *Hill*, 17 Mass. 380.

When this case was tried a second time before the circuit judge, at the November term, 1886, it was proven, that appellant had filed his final report, as executor, on July 15, 1886, and had been discharged by the county court. The order of the county court entered at that date found, that the assets were only adequate to pay 61.72 per cent of the claims of the seventh class; that the estate was insolvent as to those claims; that Wolf had paid 61.72 per cent upon all the claims of the seventh class, and the final report was, by such order, confirmed and the estate declared to be settled. Hence, it appeared affirmatively, that appellant had advanced out of his own pocket the 38.28 per cent overpaid to Gharst. Otherwise he could not have settled all the seventh class claims at 61.72 per cent of their amounts.

It is claimed that appellant could only sue in his individual capacity, and not as executor, for the over-payment to Gharst, and that he could not bring suit until he had advanced money enough out of his own means to make up to the French estate the amount of such over-payment, the amount, which was paid to Gharst by mistake, having been the money of the estate and not his own money. Upon these grounds it is urged that when the claim was first filed in the county court in 1882, the cause of action was not ripe for suit.

When the claim was presented to the county court in June, 1882, Gharst's estate owed the amount which had been over-paid to him in his lifetime. Whether Gharst's estate then owed that amount to appellant, as executor, or to appellant, as an individual, or to the other creditors of the French estate, matters not, so far as the existence of the indebtedness was concerned. The debt existed to somebody, and the same debt existed all the way through up to the last trial in November, 1886. It could make no practical difference to the Gharst estate, who owned the claim against it. As Gharst had received more money than he ought to have had, his estate was liable to refund the amount. This liability remained the same from the beginning to the end, whatever variations there may have been in the ownership of the claim, or in the form of the evidence, by which it could be substantiated.

In adjudicating upon the claim the county court was possessed of an equitable jurisdiction. (*Dixon, Assignee,* v. *Buel, Admr.* 21 Ill. 203; *Hurd* v. *Slatten,* 43 id. 348.) Equity disregards mere matters of form and looks at the substance.

It is said, that, when the claim was filed against Gharst's estate, the county court had not declared the French estate insolvent, and had not, by an order, fixed the amount of the dividend or *pro rata* percentage belonging to the creditors. Nevertheless, the amount of such percentage was capable of ascertainment in June, 1882. The proof showed at that time the assets of the French estate, the amount of Gharst's claim and the amounts of all the other claims including those filed in June, 1881. From these data it was easy to figure the amount of the percentage the creditors were entitled to and the amount of the over-payment to Gharst. The subsequent order made on July 15, 1886, was more certain and definite evidence, but, after all, it was only evidence of what already existed. When the appeal was taken to the circuit court, the trial in the latter court in November, 1886, was *de novo,* and it was proper to introduce then, as evidence, the order of July 15, 1886, though

the same evidence had not yet come into existence in 1882. *Thorp* v. *Goewey, Admr.* 85 Ill. 611.

It is said, that this claim was improperly filed by Wolf as executor of the estate of E. J. French, deceased. The money was paid to Gharst after the death of French. The law created an implied contract on the part of Gharst with Wolf to pay back the excess. An executor or administrator may sue, either in his representative or in his personal character, on contracts made with him after the death of the deceased. (Dicey on Parties to Actions, p. 233.) Where the indebtedness thus grows out of a contract with the executor, he may sue in his own name, or, if the word "executor" or "administrator" is used after his name, it will be regarded as merely descriptive of the person, and as being immaterial. *Laycock* v. *Oleson,* 60 Ill. 30.

The legal title to the money paid to Gharst was in Wolf. (*Neubrecht* v. *Santmeyer,* 50 Ill. 74; *Walker* v. *Craig,* 18 id. 116; *Makepiece* v. *Moore,* 5 Gilm. 474.) The right of action was in Wolf. The statute does not require any written pleadings in the case of a claim presented to the county court. (*Thorp* v. *Goewey, Admr. supra.*) If the right of action was in Wolf, as trustee for the French estate, upon the trial in 1882, but was in Wolf, as an individual, in 1886, by reason of his advance to the French estate of the money over-paid to Gharst, this change could make no difference to the Gharst estate. Wolf was still the legal claimant, whether claiming for himself or in trust for another. He could not charge the French estate with any of the costs or expenses of prosecuting the claim against the Gharst estate, even though he sued as executor, because he was suing to recover back money improperly paid out by himself.

Although the judgment entered by the court in November, 1886, was in favor of Wolf, as executor, he was entitled to the money in his individual capacity. The mere addition of the word, "executor," to his name would make no difference. Nor could the amount of the judgment be recovered from him

by the French estate, as assets of that estate, because he could plead as an offset the amount advanced by him to the French estate to make up the over-payment to Gharst.

We think the judgment rendered by the circuit court was right. The judgment of the Appellate Court is, therefore, reversed.

*Judgment reversed.*